**THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MARYLAND**
**(BALTIMORE DIVISION)**

In re:

                                  *

IN RE: INNER HARBOR WEST, LLC        **Case No.: 13-12198**

                                  *        **Chapter 11**

    Debtor.

                                    *

*    *    *    *    *    *    *    *    *    *    *    *    *

**DEBTOR'S MEMORANDUM IN OPPOSITION TO**
**THE MOTIONS OF WESTPORT PROPERTY INVESTMENTS, LLC**
**FOR PROTECTIVE ORDERS CONCERNING DEPOSITIONS OF**
**MATTHEW SUMMERS AND JOSEPH FANONE**
**AND MOTION TO STRIKE DEBTOR'S MOTION**
**TO DISQUALIFY BALLARD SPAHR AND FOR SANCTIONS**

The Debtor, Inner Harbor West, LLC, by and through its attorneys, Jeffrey M. Sirody,

Esquire and Jeffrey M. Sirody and Associates, P.A, respectfully objects to the Motions (the

"Motions") of Westport Property Investments LLC's ("WPI") for Protective Order in

Connection with Notices of Deposition of Matthew G. Summers and Joseph Fanone (the

"Protective Order,") and the Motion to Strike the Debtor's Motion to Disqualify Ballard Spahr

and For Sanctions (the "Motion to Strike and For Sanctions,") and in support thereof states as

follows:

<u>**INTRODUCTION**</u>

When the Debtor initially filed the Motion to Disqualify Ballard Spahr (the "Motion to

Disqualify,") it fully understood the seriousness of such an action, and did not do so lightly,

especially in light of the admonitions of this Court.  The Debtor tried to discuss this issue with

Ballard Spahr prior to the filing in hopes of a resolution or clarification, but was rebuffed.

This Court ordered evidentiary hearings, at which the Debtor was admonished it had

better prove its case.  The Court nevertheless confirmed the Debtor's right to discovery, and

shortened the time to respond to written discovery requests to conform to the hearing schedule. Reasonable discovery is an essential component of the preparation of any litigant's case, but it is especially important in light of the seriousness of the Motion to Disqualify. It was plain from the outset that the parties' view of the facts—and their conclusions—differ substantially.

Debtor's Counsel is attempting to balance our ethical obligations to zealously represent our client, and act responsibly as officers of the Court. The Debtor has a reasonable belief that an attorney-client relationship exists between Ballard Spahr and the Debtor, and therefore Ballard Spahr's representation of WPI constitutes a conflict of interest for which it should be disqualified. Based on evidence currently available to the Debtor, it believes the testimony and documentary evidence will show that from 2004 to the present, the Debtor, and other related entities with whom it shares a unity of interest and common ownership, requested legal services from attorneys at Ballard Spahr, and those legal services were provided. The Debtor and its parent entity paid Ballard Spahr's bills, and Ballard Spahr knew it was identified as counsel to the "developer" of the Westport Project on innumerable occasions. Based on the evidence of which we are aware to date, the requirements for an attorney client relationship are met, and we must protect our client from the consequences of unethical behavior. If at any time we become aware of evidence that contradicts or mitigates that conclusion, we will not hesitate to respond appropriately. Therefore discovery is essential for each party to ascertain the entire truth.

To that end, in accordance with this Court's Order and the Federal Rules, the Debtor timely propounded 23 Interrogatories and 11 Requests for Production of Documents on WPI, noticed a 30(b)(6) deposition of the representative(s) of WPI, and noticed the depositions of Joseph A. Fanone, Esq. ("Fanone,") the partner of BALLARD SPAHR whose affidavit (the "Fanone Affidavit,") formed the basis for the initial Opposition to the Motion to Disqualify, and

of Matthew Summers, Esq. ("Summers,") the partner who, on information and belief, formed WPI and represented it in negotiations to acquire the Citi note and first priority lien on the Debtor's real property, as to which WPI now seeks to lift the automatic stay and foreclose.

At every opportunity since the Motion to Disqualify was filed, counsel for WPI indignantly and vociferously brushed away any possibility that the Debtor's claim of a conflict of interest has any shred of truth. Presumably that unequivocal position is based on the evidence available to Ballard Spahr, but if it is that conclusive, why would anyone go to extraordinary lengths to resist disclosure of that evidence to the Debtor? That is exactly what WPI and its counsel have done, but that is just the tip of the iceberg.

Five days before filing the Motion to Strike and For Sanctions, at the end of the day on Friday before the deposition scheduled for Monday, WPI moved for a protective order causing the cancelation of the 30(b) (6) deposition (D. 184.) One day before filing the Motion to Strike and For Sanctions, and 14 hours before the depositions were to begin, WPI moved for another protective order, resulting in the cancelation of the depositions of Fanone and Summers (D. 190.) And just before midnight the day before filing the Motion to Strike and For Sanctions, WPI served its written discovery responses, in which WPI objected to *all 34* written discovery requests, and did not provide a single substantive response.

Not content with having unilaterally deprived the Debtor of *all* discovery, WPI then filed the Motion to Strike and For Sanctions, asking this Court to strike the Motion to Disqualify and impose sanctions on Debtor's counsel, without any evidentiary hearing or further ado. Such a request is so absurd on its face that under normal circumstances it would not require extensive discussion, and the Court would hopefully see if for what it is and turn its attention to resolving

the pending discovery matters.  Unfortunately, these are no longer normal circumstances, and this Court must know the full story.

As with the Motion to Disqualify, counsel for the Debtor is fully mindful of their obligations to all parties, their responsibilities as officers of this Court, and the need for discretion and restraint in reacting to the "heat of the battle" often generated in litigation.  Taken individually, none of the matters discussed below would have special significance and would not be worthy of bringing to the attention of the Court.  Furthermore, counsel for the Debtor recognizes the ultimate issues before this Court are the substantive matters related to this case, and does not intend to distract from that in any way.  In fact, the Debtor is genuinely pained at having to raise these matters at all.

However, in the short time since the Motion to Disqualify was filed, on multiple occasions counsel to WPI engaged in disturbing and totally unprofessional conduct.  Only now that everything has unfolded, when viewed in light of the filing of the Motion to Strike and For Sanctions, is it clear this was no random set of inappropriate acts—it was a deliberate and calculated strategy, and is very much relevant to this Court's analysis, and counsel for the Debtor can no longer remain silent about this conduct.

The Motion to Strike and For Sanctions is the culmination of an unprecedented series of actions by counsel for WPI, in which they acted in bad faith with utter disregard for the Federal Rules of Civil Procedure.  The manner in which they dealt with discovery matters alone would be cause for a serious complaint.  But their misconduct extends way beyond that.

Counsel for WPI repeatedly made direct written misrepresentations to this Court of facts impugning the integrity of counsel for the Debtor, including false accusations of violations of various bankruptcy rules and other misconduct, and misrepresented statements made by other

lawyers as well. On multiple occasions, Timothy F. McCormack ("McCormack,") counsel for WPI, was so verbally abusive to Gary Poretsky, Esq., ("Poretsky,") counsel for the Debtor, and to Kenneth B. Frank, Esq. ("Frank,") counsel for objecting creditors, that for the first time in their combined 50+ years of the practice of law, they informed counsel for WPI they were unwilling to have further telephone conferences unless they were recorded or transcribed; naturally, counsel for WPI refused to agree. As detailed below, McCormack repeatedly threatened and harassed Poretsky, and engaged in similar behavior with respect to Frank and the representative of a potential source of funds for the Debtor's reorganization.

As set forth below, there is more than ample support for each and every allegation described above, and counsel for the Debtors would not make such statements otherwise. And these are the things we know about; time will tell what will be revealed in discovery.

This Court should deny the Motion to Strike and For Sanctions for a variety of reasons more fully set forth below. This Court should also deny the motions for Protective Order, compel meaningful responses to written discovery, and in light of the totality of the facts and circumstances described herein, give the Debtor a reasonable time to conduct discovery in advance of any evidentiary hearing. WPI and its counsel claim to be disadvantaged by further delay, but it is they who deliberately embarked on a course of action designed to conceal the facts. They can no longer complain about delay.

## STATEMENT OF FACTS

1.    The Motion to Disqualify and the Motion to Reconsider were filed on October 28, 2014 (D. 145 & 146).

2.    WPI filed its Memorandum in Opposition on October 30, 2014 (D. 150).

3.      A hearing was held before this Court on October 31, to consider pending matters, at the conclusion of which this Court scheduled a series of evidentiary hearings, beginning Friday November 21, 2014, at 2:00PM, to consider, *inter alia,* Debtor's Motions to Disqualify, and to Reconsider the Substitution of Parties, WPI's Motion for Relief from Stay, and the Motion to Dismiss of the Office of the U.S. Trustee.

4.      Following the conclusion of the October 31 hearing, realizing fewer than 30 days remained for responses to written discovery, Debtor's counsel filed the Motions to Shorten Time for Written Discovery (D. 159.)

5.      On November 4, this Court granted the Motion to Shorten Time to Reply (D.165,) and shortly thereafter counsel for WPI filed its Opposition  to the Motion to Shorten Time for Discovery (D. 167,) essentially contending that the Debtor was not entitled to any discovery at all.

6.       Later in the afternoon of November 4, Debtor's counsel Gary Poretsky, Esq. ("Poretsky,) sent an email to counsel for WPI stating "[w]e would like to arrange depositions of Joseph A. Fanone and Matthew G. Summers prior to the November 21, 2014 hearing.   Please let us know the best times during the week of November 10-14, as well as their preferred location, whether downtown or in our office." (Exhibit IHW 1)

7.      In a good faith effort to resolve potential discovery disputes, including the issues surrounding discovery deadlines and scheduling depositions, Debtor's counsel called WPI's counsel in the afternoon of November 4.  During that telephone call, in response to Poretsky's request for deposition dates, counsel for WPI said they were unavailable for d*epositions* the entire week of November 10, but would get back to Poretsky.

8.    On November 7, 2014, this Court held a hearing on the Motion to Shorten Time for Discovery, and requested Debtor's Counsel to outline the scope of discovery sought.  In response, Debtor's counsel told the Court the areas of discovery were, *inter alia*:

    a.  Fannone's alleged representation of Carlyle as set forth in his affidavit:
        i.    Entity represented
        ii.   Timing
        iii.  Communication with Turner and/or Westport
        iv.   Agreements or other documents defining relationship

    b.  Billing and payment
        i.    Nature of services
        ii.   Timing of services

    c.  Fannone's activities regarding Westport

    d.  Ballard Spahr's representation of Westport
        i.     For whom
        ii.    By whom
        iii.   Pursuant to what agreements
        iv.    Billing and payment
        v.     Nature of services
        vi.    Timing of services
        vii.   Agreements and other documents defining relationship

    e.  Fannone's relationships with other lawyers for Westport

    f.  Fannone's representations of attorney/client relationship to third parties

    g.  Representation of WPI
        i.     Identity of principals
        ii.    Communications about Westport for benefit of WPI with other Ballard lawyers

    h.  Materials provided to WPI by Ballard

    i.  Agreements between WPI and Citi

    j.  Circumstances of formation of WPI and acquisition of note – sources of information upon which the note buyer acted

    k.  Communications among Ballard Spahr, WPI and principals, and third-parties regarding Westport

9.      Neither the Court nor WPI counsel objected to any of these areas of discovery, and the Court Granted the Motion to Shorten Time for Discovery.[1]

10.     Notwithstanding having actual notice on November 4 that the Debtor sought to take depositions, counsel for WPI did not raise the subject nor make any objection at the November 7 hearing.

11.     Later on November 7, Poretsky again wrote to counsel for WPI about deposition dates, saying, "We still await a response as to dates.  Please send us the dates and times that will work.  Otherwise we will notice the depositions with a time of our choosing."

12.     On Monday, November 10, having received no response, the Debtor served its Notice for the 30(b)(6) Deposition of WPI (the "30(b)(6) Deposition,") scheduled for November 17, 2014.  A copy of that notice is attached hereto as Exhibit IHW 2.

13.     On November 14, 2014, Kenneth B. Frank ("Frank") entered his appearance on behalf of creditors Thomas B Fore and TideRock Holdings, LLC.  Upon information and belief the creditors were concerned that based on information recently revealed regarding the alleged conflict of interest and other matters, their claims were being materially prejudiced by the conduct of WPI.

14.     Counsel for WPI requested a conference call to discuss "discovery matters," which was arranged for 2:00 p.m. Friday, November 14, 2014.  McCormack demanded that Poretsky tell him why he needed to take the 30(b)(6) deposition and what he intended to ask. Poretsky explained that the information sought in the deposition was within the categories of information Poretsky disclosed to the Court.  McCormack told Poretsky he disagreed with Poretsky's right to take that deposition, and said they would let Poretsky know their position.

---

[1] The Motion to Shorten Time for Discovery only related to written discovery, since that is the only discovery sought by the Debtor which had a fixed time for response.  Other forms of discovery require "reasonable notice."

Counsel for WPI did not respond to Poretsky's request for dates for the Fanone and Summers depositions.

15.     Having heard nothing from counsel for WPI an hour after the call on November 14, Poretsky served Notices of the Depositions of Fanone and Summers by electronic mail, scheduled for Wednesday, November 19, 2014—15 days after dates were first requested.

16.     At 4:16PM on November 14, counsel for WPI filed the Motion for Protective Order for the 30(b)(6) deposition ("Protective Order 1,") (D.184.)

17.     At approximately 11AM on November 17, 2014, the Debtor filed its Memorandum in Opposition to Protective Order 1 ("Opposition 1,") (D. 187.)

18.      Counsel for the Debtor had no further communications with counsel for WPI until 5:29PM, Tuesday, November 18, 2014, when Summers sent an email to Jeffrey M. Sirody, Esq. ("Sirody,") Poretsky and Frank, simply saying:  "We will be filing a motion for a protective order this evening in connection with the notices you issued to take my deposition and the deposition of Joseph Fanone.  Accordingly, we are informing you that we will not be appearing at the depositions noticed for tomorrow."  November 18 Email from Summers, Exhibit IHW 3. At 7:23PM a Motion for Protective Order was filed regarding the Fanone and Summers depositions ("Protective Order 2,") (D. 190.)

19.     At 3:48PM, on November 19, 2014, counsel for WPI filed the Motion to Strike and For Sanctions (D. 193.)

## ARGUMENT

### *THE PROTECTIVE ORDERS*

#### Legal Standard

FRCP 26(c)(1) states in pertinent part:

(1) In General.  A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has *in good faith conferred or attempted to confer* with other affected parties in an effort to resolve the dispute without court action. The court may, *for good cause*, issue an order to protect a party or person *from annoyance, embarrassment, oppression, or undue burden or expense…* (Emphasis added.)

In *Randolph v. Powercomm Constr.*, 2014 U.S. Dist. LEXIS 140337(D. Md.Oct. 1, 2014), Judge Hazel said:

…Rule [26(c)] "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).  Nonetheless, protective orders "should be sparingly used and cautiously granted." *Baron Financial Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) (citation and internal quotation marks omitted).

Essential to the issuance of a protective order is a finding by the judge of "good cause." Judge Gauvey succinctly addressed this requirement in *Baron Financial Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006)*, quoted in *Randolph, supra*:  "In order to establish good cause, a proponent may not rely upon 'stereotyped and conclusory statements,' but must present a 'particular and specific demonstration of fact,' as to why a protective order should issue."  Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing. *Merit Industries, Inc. v. Feuer*, 201 F.R.D. 382, 384-385 (E.D.Pa. 2001).

 A party requesting a protective order must show the information sought to be protected is within the scope of the intent of the Rule, in that he might be harmed by disclosure of such information.  *Iowa Beef Processors, Inc. v Bagley* 601 F.2d 949 (8th Cir 1979), *cert. denied* 441 US 907 (1979).  Or, in Judge Gauvey's words, "[h]e must demonstrate that the discovery sought lacks relevance 'to the extent that the likelihood and severity of the harm or injury caused by the deposition outweighs any need for the information.'" *Baron, supra,* at 202.

Furthermore, the powers given to the court by Rule 26(c) are expressly for the protection of parties and deponents only where bad faith, annoyance, embarrassment, or oppression is the purpose of the deposition.  Orders totally precluding discovery are rarely granted and then only in those extraordinary cases where the allegedly objectionable matters cannot be dealt with individually by appropriate objection during the deposition.  As stated by Judge Chasanow in *Abbot v. Gordon*, WL 1427362 (D. Md., 2010):

> Motions seeking to prevent the taking of depositions are generally regarded unfavorably by the courts. *See Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 125 (D.Md.2009). "By requesting the [c]ourt to prohibit plaintiff from deposing a witness, defendant ... assumes a heavy burden because *protective orders which totally prohibit a deposition should be rarely granted absent extraordinary circumstances*." *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C.2001) (Emphasis added.)

An additional threshold requirement for issuance of a protective order under FRCP 26(c) is a "…certification that the movant has *in good faith conferred or attempted to confer* with other affected parties in an effort to resolve the dispute without court action."  (Emphasis added.) Local Bankruptcy Rule 7926-1-F is even more specific regarding this requirement:

> (f) Conference of Counsel Required. Counsel must confer concerning a discovery dispute and make good faith attempts to resolve their differences. The court will not resolve a discovery dispute unless the moving party has filed a certificate stating:
>
> (1) the date, time, and place of the discovery conference, the names of all persons participating and any unresolved issues remaining; or
>
> (2) the moving party's attempts to hold such a conference without success.

This requirement is not satisfied by a perfunctory certification—it requires a genuine effort to comply, otherwise the rule is meaningless.  Thus, "[i]n addition to including the actual certification with a motion compelling discovery, the movant must have *performed* as set forth in the rule." *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996). "The parties *must* hold a conference, possibly through the exchange of correspondence but

preferably through person-to-person meeting, and *must* compare views and attempt to reach an agreement, including by compromise if appropriate." *Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 636 (D. Col. 2003) (Emphasis added).

Finally, but of no less importance, the good faith requirement of a genuine discussion requires the parties to treat each other in a respectful manner.  In fact, the Maryland State Bar Association Code of Civility is incorporated into the Local Bankruptcy Rules in Appendix E to ensure such conduct.   A good faith conference is impossible without civility.

### *Protective Order 1*

Protective Order 1 was filed by WPI on Friday, November 14, 2014, to prevent the 30(b)(6) deposition of WPI (D.184).  The Debtor filed its Opposition to Protective Order 1 on Monday, November 17, 2014 (D. 187) and incorporates the arguments set forth therein.

In light of subsequent events, it is now clear that Protective Order 1 was filed as part of a carefully orchestrated strategy, culminating in the Motion to Strike and For Sanctions.  It was obvious from the manner in which counsel for WPI behaved in the conference call on November 14, that their minds were already made up before the call, and in fact it appears as if Protective Order 1 were already written before the call began.[2]  Regardless, the Debtor has a right to take the 30(b)(6) deposition and any potentially objectionable avenues of inquiry can be handled on a question by question basis.  Because this Court intends to address all pending Motions, including the Motion for Reconsideration of Substitution of Parties and the Motion to Lift the Automatic Stay, discovery of WPI is entirely appropriate.

---

[2] For example, in ¶15 of Protective Order 1, WPI says, "Inner Harbor West LLC seeks not to depose Joseph A. Fanone or any representative of Ballard Spahr or any other party with personal knowledge relevant to the Motion to Disqualify, but, instead, seeks a deposition of Westport Property Investments, LLC."  Aside from the fact that counsel for WPI had known since November 4 those depositions were sought, the actual notices were served on them an hour or more before Protective Order 1 was filed.

### *Protective Order 2*

Protective Order 2 is an even more egregious example of the degree to which WPI and Ballard Spahr were willing to disregard the Rules and their responsibilities as officers of this Court, to avoid submitting to discovery.  Given all of the facts and circumstances, there can be no doubt Protective Order 2 was filed in bad faith.

To begin with, Protective Order 2 should be denied because the required certification of a good faith effort to resolve the dispute is not remotely compliant with the Rules, and is nothing more than a sham.  Furthermore, it is not truthful:

> I HEREBY CERTIFY that information contained in paragraph 21 and 22 about good faith efforts to resolve disputes concerning the depositions is true and correct and that, in light of the nature of the depositions sought and the attempt to invade the attorney client privilege involved herein, further efforts to resolve the discovery dispute would be futile.

In Paragraph 21, counsel for WPI represented the following to this Court:

> As a result[3], counsel to Westport Property Investments LLC attempted to reach Mr. Poretsky by telephone and email concerning deposition scheduling. Those efforts were unsuccessful as Mr. Poretsky had already left for the day by 2:15 p.m. on that Friday. During *the period November 7, 2014 through the time the deposition notices were issued, Mr. Poretsky made no further inquiry about the issues surrounding a deposition of Mr. Summers or Mr. Fanone or scheduling of the same.*

In other words, even assuming the truth of these statements, counsel for WPI represents to this Court that the good faith certification requirement is satisfied, because:

1.     Even though the Debtor requested for dates to depose Summers and Fanone on November 4, the Debtor did not raise the subject again; and

---

[3] In ¶21 of Protective Order 2, WPI said "It was initially agreed that discovery issues, including deposition issues and deposition scheduling, would be discussed after the hearing on November 7, 2014. However, Mr. Poretsky left the courtroom immediately after the hearing, preventing that discussion from occurring."  Mr. Poretsky has no knowledge whatsoever of such an agreement.  As he was leaving the hearing, he was asked when the order would be ready.  He replied, "Before 4:40."  He was not asked about any meeting or discussion of any discovery matter.

2.      The "nature of the depositions sought" and the "attempt to invade the attorney-client privilege" rendered "*further*" efforts to resolve the discovery disputes futile. In light of the actual facts and circumstances, however, filing Protective Order 2 on the basis of this certification cannot be tolerated.

First, the representation that Mr. Poretsky made no further efforts to schedule the depositions between November 7 and November 14 is absolutely false.  Attached hereto as Exhibit IHW 4, is a copy of Poretsky's email dated November 7. 2014, in which he expressly said: "We still await a response as to dates.  Please send us the dates and times that will work. Otherwise we will notice the depositions with a time of our choosing."

Second, during the conference call on November 14, 2014, Poretsky again asked about dates for those depositions, but counsel for WPI ignored the question and gave no response at all.

Third, and perhaps of the most concern, since the Notices for the Fanone and Summers depositions were served in the afternoon of November 14, counsel for WPI had five days within which to express their objection and seek a conference to resolve the issue.  But they did nothing during that period, waiting until 5:25PM on the eve of the depositions to simply announce they *intended* to file Protective Order 2 and would not appear.[4]  *See,* Exhibit IHW 5.

Putting aside the purported substantive basis for Protective Order 2, the actions of counsel to WPI in preventing these depositions certainly appear to constitute a knowing and intentional abuse of the legal process.  It is the affirmative responsibility of the objecting party to seek resolution of a dispute.  Here, the objecting party did just the opposite—it simply wanted to stop the deposition.

---

[4] The email was sent at 5:25PM, on November 18, after Poretsky had left his office, and after it was too late to cancel the court reporter scheduled for 9:30AM the next morning, incurring a cancelation charge.  Aside from that cost, conduct of this nature would certainly seem to be sanctionable.

An examination of the underlying basis on which WPI seeks Protective Order 2 reveals both why no effort was made to address any disputes, and graphically exposes the sheer hypocrisy of Ballard Spahr's entire position.  It is also built on misrepresentations and outright fabrication.

No clearer illustration can be found than ¶32 of Protective Order 2:

> Since the Motion to Disqualify was filed, counsel to Westport Property Investments LLC has repeatedly asserted that Inner Harbor West LLC's intention is simply to create distractions and delay. There could not be clearer proof of this intent than the decision to issue depositions notices to Mr. Summers and Mr. Fanone. The intention becomes even clearer in light of the fact that the deposition notices were issued a week after the court imposed deadline for doing so.

Typical of much of the rhetoric from WPI and its counsel, these statements might be funny if this were not such a serious matter.  With a straight face, Ballard Spahr represents to this court that the decision to depose Fanone and Summers is "simply to create distractions and delay."

Somehow, Ballard Spahr has managed to overlook the fact that Fannone's sworn affidavit was the *sole* basis for their claims about whom Fanone represented and who he did not. In what universe could there be any question about the propriety of deposing Fanone?  Similarly, in view of Ballard Spahr's adamant refusal to disclose the identity of the principals of WPI, and its objection to the 30(b)(6) Deposition, the *only* known person with information related to much of the discovery information Poretsky described to this Court is Summers.  Alleging that these depositions were intended to create delay is even more farfetched.  The only delay is a result of the obstructive behavior of WPI and its counsel.

Those statements are merely ridiculous; the last sentence is a deliberate attempt to mislead this Court:  "The intention becomes even clearer in light of the fact that the deposition

notices were issued a week after the court imposed deadline for doing so." [5]  This is a blatant

misstatement.  The "court imposed deadline" *only* applied to written discovery, which counsel to

WPI knows because it was pointed out to them on page 4 of the Debtor's Opposition to

Protective Order 1 (Doc. 187.)  The date selected by the Debtor because none was offered by

WPI was 16 days after the Debtor advised WPI of its intention to depose Fannone and

Summers—more than reasonable advance notice.

The remaining contentions in support of Protective Order 2 fall into 2 categories:  blanket

assertions of privilege and relevance, and technical objections.  As to the former, it is universally

understood that objections of that nature are rarely, if ever, grounds for prohibiting a deposition,

and are entirely susceptible to treatment on a question by question basis.

Finally, WPI raises the following technical objections as grounds for Protective Order 1:

(a) the Notices of Deposition were ineffective; personal service of a subpoena was required; and

(b) checks for mileage should have been provided.  Obviously both of those objections were

easily curable, and that is an excellent example of why a good faith attempt to resolve discovery

disputes is required.  Unfortunately, it is an even better illustration of why Ballard Spahr acted in

bad faith by making no attempt to do so:  they did not want to give the Debtor any opportunity to

rectify those technical issues.

It is hard to conceive of a clearer case for denial of a protective order, and the Debtor

urges this Court to do so.

### *MOTION TO STRIKE AND FOR SANCTIONS*

---

[5] Essentially the same false and misleading allegations are made in ¶29 of Protective Order 2:  "First, the notices are untimely and seek to conduct the depositions on less than reasonable notice. This Court imposed a deadline of Friday, November 7, 2014 for Inner Harbor West, LLC to propound all of its discovery. Inexplicably, Inner Harbor West LLC waited until late in the afternoon of Friday, November 14, 2014, a week after the Court imposed deadline, to issue the Deposition Notices. As a result, the Deposition Notices were issued on less than three (3) business days' notice and should be denied as untimely under the express terms of this Court's order expediting discovery as well as denied as providing insufficient advance notice and preparation time to Mr. Fanone and Mr. Summers."

As objectionable as the Protective Orders may be, they pale in comparison to the Motion to Strike and For Sanctions.  In what can only be regarded as a child's attempt at magic, having unilaterally caused this Court's Order permitting discovery to vanish, Ballard Spahr produces two additional affidavits out of thin air, proclaims victory, and asks this Court to impose sanctions against Debtor's counsel.  A good illusionist leaves the audience in wonderment, asking "How did he do that?"  This sideshow provokes a similar reaction, "What can they possibly be thinking?"

By filing the Protective Orders, Ballard Spahr could at least point to a provision in the Rules that colorably justified their action. Their response to written discovery requests, however, is plain bad faith.

As stated above, the Debtor propounded 23 interrogatories and 11 document requests, attached hereto as Exhibits IHW 6 and IHW 7, respectively.  In their responses, attached hereto as Exhibits IHW8 and IHW 9, WPI objected to every one, and provided no substantive responses whatsoever.[6]  The most extraordinary aspect of this discovery trifecta is the basis on which WPI refused to answer Interrogatories 15-23, and associated document requests, all of which related to the very assertions Ballard Spahr has made in defense of the Motion to Disqualify.  For example, Interrogatory 15 asked directly about Fannone's statements about who he represented:

> Identify with particularity the factual basis for any statements or representations by Fanone the nature of any attorney/client relationships between him and any parties related in any way to the Property, the Debtor or any related party, the Claim, or any other person relevant thereto, including any documents evidencing or refuting such relationships.

The answer to this Interrogatory, which is the same for Interrogatories 15-23 is extraordinary:  "Westport Property Investments, LLC objects to this interrogatory in that it seeks

---

[6] Late Wednesday afternoon, November 19, WPI produced a copy of the affidavit of Paul Shelton, Esq.  That is the only document ever produced.

information within the possession of third-parties other than Westport Property Investments, LLC." If the Interrogatory asks for the factual basis for Fannone's statements, the third-parties in possession of that information can only be Fanone or other persons at Ballard Spahr—WPI's attorneys. It goes without saying that information in possession of a party's agents and attorneys, unless privileged, is deemed to be knowledge of the party, and that is expressly confirmed in introductory paragraph 2 of WPI's Answers to Interrogatories: "The information supplied in these answers is not based solely on the knowledge of the executing party but includes the knowledge of the party's agents, representatives and attorneys unless privileged."

On what possible legitimate basis can WPI and Ballard Spahr justify a wholesale, blanket refusal to provide answers to the central issues of the Motion for Disqualification, because the information is in their possession and not their client's? They attached affidavits from Alan Cason, Esq. (the "Cason Affidavit,") and Paul Shelton, Esq. (the "Shelton Affidavit,") to the Motion to Strike and For Sanctions. Although they did produce the Shelton Affidavit—the *only* document produced—they never even produced the Cason Affidavit, notwithstanding the fact that it was dated November 13, 2014.

WPI also refused to respond to numerous document requests and interrogatories on the basis of the attorney-client privilege. They did so, however, without producing any privilege log whatsoever, as required by the Rules. As with the Protective Orders, it is clear that WPI and Ballard Spahr were simply intent in providing no information whatsoever, in preparation for filing the Motion to Strike and For Sanctions.

The total failure to provide discovery should be sufficient to deny the Motion to Strike and For Sanctions. The proper setting for presentation of evidence arguments regarding the substance of the Motion to Disqualify is an evidentiary hearing. This is not the equivalent of a

motion for summary judgment, and although the Debtor does not think it is appropriate to engage

in a detailed substantive argument, it can easily put an end to Ballard Spahr's contention that the

Motion to Disqualify has no basis and the Debtor is simply using it as a delaying tactic.  Nothing

could be further from the truth, as virtually any excerpt from the more than 3,000 pages of

documents produced to WPI makes abundantly clear.

Ballard Spahr's defense is based entirely on the statements by Fanone in his affidavit

dated October 30, 2014 (the "Fanone Affidavit,") attached as Exhibit 4 to the Opposition of

Ballard Spahr to the Motion to Disqualify (D. 150-4).  In that affidavit, Fanone claims Ballard

Spahr "…was retained by Carlyle Partners to represent and advise …C.R.P Westport Holdings,

LLC." (Fanone Affidavit ¶3.)  He further claims that "[a]t no time did I represent Inner Harbor

West LLC, Inner Harbor West II LLC, Middle Branch Development LLC, Westport

Development LLC, Patrick W. Turner or Neil J. Ruther," (Fanone Affidavit ¶9,) and "Ballard

Spahr LLP's representation of CRP Westport Holdings, L.L.C. ended in 2009." (Fanone

Affidavit ¶10).  Putting aside the fact that Ballard Spahr refused to produce *any* documentation to

support those statements, and refused to allow Fannone's deposition to proceed, those statements

are not remotely dispositive of the question.

Considering what constitutes an attorney-client relationship, the Court of Appeals stated:

"the term 'client' includes one who is either rendered professional legal services by a lawyer, or

who consults a lawyer with a view to obtaining professional legal services from him." *Attorney*

*Grievance Commission of Maryland v. Brooke*, 374 Md. 155, 173 (2003) (quoting *Board of*

*Overseers of the Bar v. Mangan*, 763 A. 2d. 1189, 1192 (ME 2001) (emphasis added). The Court

of Appeals went on to say that the absence of an explicit agreement and payment to the lawyer

does not mean that an attorney-client relationship has not been formed. *Id.* at 173-74. Rather, explained the Court, "A relationship of client and lawyer arises when:

> (1) a person manifests to a lawyer the person's interest that the lawyer provide legal services for the person; and . . .
> (2) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services.

*Id.* at 174 (quoting the Restatement (Third) of the Law Governing Lawyers § 14. The *Brooke* court also enunciated the following standard, which in fact formed the basis for its holding that an attorney-client relationship had been formed in that case:

> An attorney-client relationship is said to have been created when (1) a person seeks advice or assistance from an attorney; (2) the advice or assistance sought pertains to matters within the attorney's professional competence; and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.

The Debtor produced over 3,000 pages of documents to WPI. Among those documents are hundreds of emails in which Cara Frye, Esq. ("Frye,") the project manager and coordinator of all legal services for the Westport development, sought advice and assistance from Fanone pertaining to matters within his professional competence, and he gave such assistance. Moreover, Fanone knew he was always identified publicly as counsel to all of the Westport entities, and never objected in any way.

For example, in July, 2009, Fanone drafted a confidentiality agreement in preparation for the disclosure of information about the Westport financing to a third party. After a series of emails among Fanone, Frye and others, in which Frye sought Fannone's advice on various aspects of the agreement (*see, e.g.* Email string, Exhibit IHW 10,) Fanone completed the draft and it was ultimately executed. In that agreement, Fanone defined the "Developer" collectively as CRP Westport Holdings, LLC and Westport Development, LLC. (*See,* Confidentiality Agreement, Exhibit IHW 11.) Clearly Fanone was rendering legal services to both entities.

Fannone's recognition of the identity of the "developer" of the project is especially significant, since throughout the life of the project he was identified as "Counsel to the Developer." *See, e.g.,* Distribution List as of 10/24/08, p. 2, Exhibit IHW 12, where Shelton and Fanone were listed as "Developer's Counsel.

Furthermore, Fannone's representation that the engagement ended in 2009 is obviously false.  See,e.g. Emails 2010-2011, Exhibit IHW 13, in which Fanone continued to provide services well after 2009.  Finally, although not dispositive by itself, documents produced to WPI confirm that Fannone's bills were paid by Westport Development. IHW 14

These examples represent a mere fraction of the evidence which unquestionably provides a reasonable basis for the Motion to Disqualify, but significant issues remain and without discovery it would be impossible for the Debtor to present its case.  In any event, the foregoing demonstrates more than a *prima facie* case, and if sanctions are appropriate, it is WPI and its counsel who should be responsible.

WHEREFORE, the Debtor, by and through undersigned counsel, respectfully request this Honorable Court DENY the Motion for Protective Order, Motion to Strike Debtor's Motion to Disqualify Ballard Spahr and Motion For Sanctions, and grant such other and further relief as this court deems just and proper.

Dated: November 21, 2014                    Respectfully submitted,

                                            */s/Jeffrey M. Sirody*
                                            Jeffrey M. Sirody, Esquire
                                            Jeffrey M. Sirody & Associates, P.A.
                                            1777 Reisterstown Road, Suite 360 E
                                            Baltimore, Maryland 21208

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 21st day of November, 2014, a true and correct copy of the foregoing Opposition has been caused to be served via the Court's ECF system or by first class mail, postage prepaid, to:

Marc A. Ominsky, Esquire
The Law Offices of Marc A. Ominsky
Century Plaza Building
10632 Little Patuxent Parkway, Suite 249
Columbia, Maryland 21044

Matthew G. Summers, Esquire
Timothy F. McCormick, Esquire
Ballard Spahr LLP
300 E. Lombard Street, 18th Floor
Baltimore, Maryland 21202

Joel I. Sher, Esquire
Richard M. Goldberg, Esquire
Shapiro Sher Guinot & Sandler
36 South Charles Street, 20th Floor
Baltimore, MD 21201-3147

Joseph J. Bellinger, Esquire
Offit Kurman, PA
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202

Citigroup Global Markets Realty Corp.
c/o Matthew W. Oakey, Esquire
Gallagher Evelius & Jones LLP
218 North Charles Street, Suite 400
Baltimore, Maryland 21202

Kenneth B. Frank, Esquire
Kenneth B. Frank, PA
1808 Dixon Road
Baltimore, MD 21209

Stuart A. Krause, Esquire
Nathan Schwed, Esquire

Zeichner Ellman & Krause LLP
1211 Avenue of the Americas
New York, New York 10036

Stuart Levine, Esquire
Law Offices of Stuart Levine, LLC
29 West Susquehanna Avenue
Baltimore, Maryland 21204

Mark C. Fields, Esquire
Law Offices of Mark C. Fields
333 South Hope Street, 35th Floor
Los Angeles, CA 90071

C. Frye & Associates
Attn: Cara A. Frye
1700 Beason Street
Baltimore, Maryland 21230

Contractors Services Inc.
3 Talbot Street, Suite 202A
Lutherville, Maryland 21093

Dixie Construction
260 Hopewell Road
Churchville, Maryland 21028

Rosenberg Martin Greenberg PC
25 South Charles Street, 21st Floor
Baltimore, Maryland 21201

STV Engineering
7125 Ambassador Road, Suite 200
Baltimore, Maryland 21244

Urban Green Environmental LLC
P.O. Box 4869
Baltimore, Maryland 21211

Gerard A. Vetter, Esquire
Katherine A. Levin, Esquire
Office of the U.S. Trustee
Garmatz Federal Courthouse
101 West Lombard Street, Suite 2625
Baltimore, Maryland 21202

_/s/Jeffrey M. Sirody_
Jeffrey M. Sirody